IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENDALL RILEY, AIS 290465, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 2:19-CV-1070-MHT-KFP |
| | ) |
| THE DEPARTMENT OF | ) |
| CORRECTION FOR THE STATE OF | ) |
| ALABAMA, et al., | ) |
| | ) |
|    Defendants. | ) |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

**I.    INTRODUCTION**

This 42 U.S.C. § 1983 action filed by Kendall Riley, an indigent state inmate, alleging excessive force at Kilby Correctional Facility and inadequate medical attention following the incident. Doc. 1. The named defendants are Morris Rogers, Jr., who is employed by the Alabama Department of Corrections ("ADOC") as a correctional lieutenant, Arkeene Harvey, who is employed by the ADOC as a Correctional Sergeant, and the Alabama Department of Corrections. Doc. 1.

Defendants Harvey and Rogers deny violating Riley's constitutional rights and filed a Special Report (Doc. 18) with supporting evidentiary materials, including affidavits, prison documents, medical records, and photographs. After reviewing the Special Report, the Court issued an Order on April 9, 2020, requiring Riley to respond to the report with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 20. This Order specifically cautioned that, unless a party presented sufficient legal

cause, the Court would treat the report as a motion for summary judgment, and rule on the motion after considering any response. Doc. 20 at 2. Riley filed a response to the Special Report. Doc. 21. Pursuant to the April 9 Order, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes it is due to be granted in part and denied in part.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial

exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this Court disregard elementary principles of production and proof in a civil case.

## III. FACTUAL BACKGROUND

Riley claims Defendants Rogers and Harvey assaulted him on October 10, 2019, causing injuries for which he did not receive adequate medical care, violating his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1 at 2–3, 5. He signed his Complaint under penalty of perjury. Doc. 1 at 4. Therefore, the Court will treat the Complaint as evidence when ruling on Defendants' motion for summary judgment. *Sears*, 922 F.3d at 1206 (citation omitted). Although Riley filed a response to Defendants' Special Report, the response is not signed under penalty of perjury. Doc. 21 at 2. Therefore, the Court does not treat its factual assertions as evidence on summary judgment. *See id.*; *Sharma v. Johnston*, 515 F. App'x 818, 819 (11th Cir. 2013) (per curiam) (citation omitted) (holding that "[u]nsworn statements may [] not be considered when evaluating a summary judgment motion").

Riley's claims stem from the following facts, viewed in the light most favorable to him. On October 10, 2019, Rogers was assigned as the Afternoon Team Commander. Doc. 18-3 at 1. According to the incident report:

> At approximately 5:20 pm, Lieutenant Rogers was standing on the Main hallway, when he observed inmate Kindall Riley, B/290465 (Al-l2A) (Gangster Disciple), with an object concealed under his arm. Lieutenant Rogers ordered inmate Riley to stop and submit to a search. Inmate Riley complied. While searching, Lieutenant Rogers discovered an Orange underneath inmate Riley's arm. Lieutenant Rogers confiscated the Orange and reprimanded inmate Riley concerning his negative behavior. Inmate Riley stated, "Y'all tripping over an Orange, gonna make me catch a murder charge in this bitch." Lieutenant Rogers ordered inmate Riley to refrain from using any further threatening language. Inmate Riley continued to by raising his hands and stating "Wait until I get my knife". Lieutenant Rogers, fearing for his immediate safety, placed inmate Riley on the floor and placed him in handcuffs. Correctional Sergeant Arkeene Harvey observed the incident and assisted with restraining inmate Riley. Inmate Riley was assisted off the floor and escorted to P-Ward for a medical assessment. Licensed Practical Nurse Rebecca McCall completed an Inmate Body Chart Documentation Form on inmate Riley. Lieutenant Rogers reported the incident to Correctional Captain Anthony Smiley. Lieutenant Rogers, Sergeant Harvey and inmate Riley provided written statements. After being assessed, inmate Riley was reassigned to the Restrictive Housing Unit, pending disciplinary action for threats and disorderly conduct. While inventorying inmate Riley's property, Officer Ervin Hardy discovered a makeshift knife [and] reported his findings to Lieutenant Rogers. Inmate Riley will receive disciplinary action for possession of a weapon device. The weapon was placed in the Suspect Evidence box located in Central Control. No further action taken.

Doc. 18-3 at 1.

Rogers testifies as follows:

> [I] was standing on the Main Hallway monitoring inmate traffic returning from the Dining Facility. While monitoring inmate traffic, I observed inmate Kendall Riley, 8/290465, walking on the hallway attempting to conceal an unknown object. I stopped inmate Riley and ordered him to submit to a pat search. While searching inmate Riley, I confiscated an orange underneath his arm. I began to verbally reprimand inmate Riley and he interrupted by stating, "Y'all tripping over and orange, gonna make me catch a murder

charge in this bitch!" I instructed inmate Riley to refrain from using any further threatening and profane language. Inmate Riley continued by stating, "Wait until I get to my knife." Inmate Riley raised his hands towards me. Fearing for my immediate safety, I placed inmate Riley on the floor and placed him in handcuffs. Correctional Sergeant Arkeene Harvey observed inmate Riley's behavior and responded to the area. Sergeant Harvey assisted inmate Riley off the floor and escorted him to P-Ward for a Medical Assessment.

Doc. 18-1 at 1–2.

Harvey testifies as follows:

On October 10, 2019, I [ ] observed inmate Kindall Riley B/290465, being disorderly and raise his hands aggressively towards Correctional Lieutenant Morris Rogers. I observed Lieutenant Rogers placed inmate Riley on the floor and in restraints. I assisted inmate Riley off the floor and escorted him to the Health Care Unit for medical assessment.

Doc. 18-2 at 1.

The inmate statement section of Riley's October 10 body chart indicates "altercation—restrictive housing placement." Doc. 18-3 at 3. Medical personnel documented Riley's injuries, which consisted of a "swollen busted lip (lower), swelling left side of head, no other signs of trauma . . . ." *Id*. Following an examination by medical personnel, Riley was reassigned to the restrictive housing unit pending disciplinary action for threats and disorderly conduct. *Doc. 18-3 at 1; see also Doc. 18-3 at 2 (Duty Officer Report)*.

Riley and Defendants completed use of force written statements on October 10. Doc. 18-3 at 4–8. In his written statement Riley wrote: "I attempted to bring an orange out of the kitchen and Lt. Rogers, Jr., and Sgt. Harvey took me to the P-Ward infirmary and assaulted me busting my lip leaving it swollen and kicking me in the side of the head

5

leaving it swollen." Doc. 18-3 at 4. Defendants' use of force written statements reiterate their sworn affidavits. Doc. 18-3 at 5–8.

Prison officials investigated the incident by questioning Riley and Defendants, who provided statements identical to their use of force written statements. Doc. 18-3 at 9. Following the investigation, the investigating officer found the use of force was justified. *Id.*

Riley's sworn Complaint alleges Defendants assaulted him as he was leaving the chow hall and as they escorted him to the health care unit. Doc. 1 at 3. But Defendants' institutional incident report reflects that Rogers conducted a takedown of Riley at the chow hall, that Harvey assisted Rogers in restraining Riley, and Defendants then escorted Riley to P-Ward for a medical assessment. Doc. 18-3 at 1; *see also* Doc. 18-3 at 2 (Duty Officer Report).

## IV.   DISCUSSION

### A.   The Alabama Department of Corrections

The Eleventh Amendment to the United States Constitution bars plaintiffs from suing the State directly. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). State agencies share this absolute immunity from suit. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (finding that "[t]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit."). Because Plaintiff's claims for damages are asserted directly against the ADOC, this defendant must be dismissed with prejudice. *See id*.

B.     **Sovereign Immunity and Individual Defendants**

It is not clear from the Complaint whether Riley brings suit against Defendants in their individual and official capacities. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). The Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (quotation marks and citation omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hosp.*, 465 U.S. at 100, or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)); Ala. Const. Art. I, § 14. Thus, to the extent Plaintiff sues Defendants in their official capacities, as state actors, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### C. Qualified Immunity

Regarding Riley's excessive force claim against Defendants in their individual capacity, Defendants argue that Riley's allegations fail to state a claim and that they are entitled to qualified immunity.

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop [v. City of Atlanta*, 485 F.3d 1130, 1136-1137 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell [v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002). . . . "While . . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)]."

*Bowden*, 576 F. App'x 951, 954–955 (11th Cir. 2014) (per curiam). Taking them as true for consideration of the summary judgment motion, the Court must consider whether Riley's allegations that Defendants used excessive force against him on two occasions sets forth a violation of his Eighth Amendment rights.

### D. Excessive Force

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth

Amendment excessive force claim contains both subjective and objective components. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. 1 (quotation marks omitted). In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. "When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quotation marks and citation omitted). Thus, in an excessive force case like this one, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 F. App'x at 953 (internal quotations and citation omitted).

As set out above, Riley's testimony indicates that Defendants assaulted him at the chow hall and while escorting him to the health care unit. According to the Complaint, Defendants stomped and kicked Riley in the head and face, and the medical records and photographic evidence do not refute his version of events. Doc. 1; *see also* Doc. 18-3 at 3, 26–37.

Defendants deny using excessive force and, instead, maintain that the force used against Riley was necessary and appropriate under the circumstances. Defendants' version of events relays only one occurrence of force—in the chow hall. Riley's version claims there were two occurrences—one in the chow hall and another "once [he] was escorted" to the infirmary. According to Defendants, after Rogers directed Riley to submit to a pat search when exiting the chow hall, Riley raised a hand toward the officer after uttering verbal threats, causing Rogers to fear for his safety. In response, Rogers then performed a take down on Riley with Harvey's assistance to return Riley to an upright position. Doc.

18-1 at 1–2; Doc. 18-2 at 1; Doc. 18-3 at 1–2. Defendants deny the use of excessive force and argue that they did not act maliciously or sadistically to cause Riley harm and that no more force than necessary was used to subdue and gain control of Riley. *See* Doc. 18.

The Court is required at this stage of the proceedings to view the facts in the light most favorable to Riley and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson*, 477 U.S. at 255 (all justifiable inferences are to be drawn in favor of the party opposing summary judgment). Crediting Riley's version, Defendants undertook actions against him by assaulting him at the chow hall and while escorting him to the infirmary, at which time he was in restraints. Doc. 1 at 3; Doc. 18-3 at 1, 2. Riley claims the challenged actions caused him to suffer injuries to his body as documented in his medical records, which show he had signs of trauma including a swollen, busted lower lip, and swelling to the left side of his head. Doc.1 at 3, 5; Doc. 18-3 at 3. This version of the events could support an excessive force claim. *Bowden*, 576 F. App'x at 954.

Viewing the facts in the light most favorable to Riley, the Court concludes Defendants are not entitled to qualified immunity, as Riley has alleged facts sufficient to survive their motion for summary judgment on the excessive force claim. Disputed issues of material fact exist as to the need for the use of force, the nature of the force used, and whether Defendants acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment regarding Riley's excessive force against Defendants in their individual capacity is due to be denied.

### E. Deliberate Indifference

Riley alleges that his Eighth Amendment right to be free from cruel and unusual punishment was abridged when he did not receive proper medical attention after Defendants assaulted him. Doc. 1 at 3. In support of this claim, Riley states he never saw a doctor "after being stumped [sic] and kicked in the head and face." *Id.* The undisputed evidence reflects Defendants escorted Riley to the health care unit after the challenged incident where a nurse examined him and completed a body chart. Docs. 18-1, 18-2, 18-3 at 1–3.

The Supreme Court determined in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Deliberate indifference requires that Defendants have subjective knowledge of the risk of harm and consciously disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (quotation marks and citation omitted) (holding that

12

"an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate"). Mere negligence or a failure to act reasonably is not enough. *Estelle*, 429 U.S. 105-06. Defendants must have the subjective intent to cause harm. *Id.* at 104.

Here, Riley presents no evidence sufficient to create a genuine issue of disputed fact regarding his claim that Defendants acted with deliberate indifference to his medical needs. It is clear from the pleadings that Defendants are not health care professionals and do not make decisions regarding inmate medical care and treatment. There is no evidence that Defendants delayed Riley's access to medical care after the October 10 incident; that they attempted to intercede, overrule, or influence decisions made by medical personnel regarding Riley's medical care; or that they personally participated in or had any direct involvement with the medical treatment provided to him.

In the event Riley seeks to hold Defendants liable for the treatment provided by medical professionals, he is likewise entitled to no relief:

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed. Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

On this record, the Court finds no evidence that supports Riley's claim that Defendants violated his Eighth Amendment right to adequate medical care. Riley presents no evidence of an objectively substantial risk of serious harm, nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by Defendants, each of which is a required element of the instant Eighth Amendment claim. *See Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (explaining that conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment). Therefore, Defendants are entitled to qualified immunity on Riley's claim that he was denied adequate medical care, and summary judgment is due to be granted in their favor.

## V.     CONCLUSION

Accordingly, the undersigned Magistrate Judge RECOMMENDS the following:

1.     Defendants' Motion for Summary Judgment (Doc. 18) on Plaintiff's claims for monetary damages in their official capacity be GRANTED and these claims be DISMISSED with prejudice.

2.     Defendants' Motion for Summary Judgment on Plaintiff's claim of excessive force in their individual capacity be DENIED.

3.     Defendants' Motion for Summary Judgment on Plaintiff's claim of deliberate indifference be GRANTED and this claim be DISMISSED with prejudice.

4.     Plaintiff's Complaint for damages against the Alabama Department of Corrections be DISMISSED with prejudice.

5.     The case be referred to a Magistrate Judge of this Court for mediation.

6.      This case be set for a bench trial on Plaintiff's excessive force claim against Defendants Rogers and Harvey.

It is further ORDERED that by **November 14, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 28th day of October, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

15